IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

LAMAR SIMPSON, #1906542 §
    *Plaintiff* §
 §
v. § CIVIL ACTION NO. 4:15cv644
 §
DIRECTOR, TDCJ-CID, et al., §
    *Defendants* §

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Lamar Simpson filed a civil rights complaint pursuant to 42 U.S.C. §1983. He claims Defendants violated his constitutional rights while he was incarcerated at the Buster Cole Unit of the Texas Department of Criminal Justice. Plaintiff brings suit against Defendants in their individual capacities and seeks injunctive relief and punitive damages in the amount of five million dollars ($5,000,000). This Memorandum Opinion and Order concerns Defendants Patton, Pinkston, and Welch's motion for summary judgment (Dkt. #35), as well as Plaintiff's response to such motion (Dkt. #39).

## BACKGROUND

Plaintiff asserts Defendants Sherry Patton and Kathryn Pinkston violated his First Amendment right to freely exercise his Jewish faith by confiscating material he used for religious study. He also claims that his due process rights under the Fourteenth Amendment were violated by Defendant Jerry Welch, Jr., the hearing officer for the disciplinary case in which Plaintiff was found guilty of unauthorized storage of property. Defendants Brad Livingston and Donna Kazmierczak have been dismissed from the case (Dkt. #48). The remaining Defendants are Officers Patton, Pinkston, and Welch.

In Plaintiff's complaint, he alleges that a dorm search was conducted, and Officer Patton "confiscated religious material claiming it [was] improperly stored [and took] it [by] force." Plaintiff alleges Officer Pinkston aided "in the confiscation instead of acting where required by employee's

1

position." Prison property records show that four (4) books, nine (9) letters, twenty (20) miscellaneous papers, one (1) pen, four (4) cards, and two (2) Bible study books were confiscated. Plaintiff was then charged in a disciplinary proceeding for the failure to properly store his property. Plaintiff alleges Officer Welch "found me guilty without allowing me to challenge disciplinary sanction[s] (denied witnesses)."

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The three remaining Defendants assert they are entitled to summary judgment. Attached to their motion are affidavits from each Defendant as well as grievance, classification, disciplinary, property, and Chaplain's Office records in support. Defendants assert they are entitled to judgment as a matter of law because:

1. Plaintiff fails to make a *prima facie* First Amendment free exercise claim;

2. Plaintiff fails to make a *prima facie* Fourteenth Amendment claim;

3. Defendants are entitled to qualified immunity;

4. Section 1983 does not create a cause of action based on supervisory liability; and

5. Defendants are entitled to Eleventh Amendment immunity.

## PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT

Plaintiff filed a response to the Defendants' motion for summary judgment. In it, he comments on several pages from the TDCJ records, as well as from affidavits submitted by Defendants. Specifically, Plaintiff accuses each of the officers of being untruthful, and complains they did not follow TDCJ policies.

Plaintiff also attached his own affidavit. In it, he reiterates his claim that, while studying religious materials in his cell, officers entered and ordered the offenders to go into the dayroom. Plaintiff states, that after leaving his books and other personal belongings on his bunk, he heard Officer Patton say that my property "looks to be stored improperly." Plaintiff reiterates that he believes this is a violation of his First Amendment right to exercise his Jewish religion. He also attaches several other exhibits including an Inter-Office Communications sheet from one of

2

Plaintiff's cellmates, Victor Moran. In it, Mr. Moran states that officers arrived to do a search and he, as well as Plaintiff, were on their bunks studying. Mr. Moran states that one offender made a verbal statement that caused the dorm to have all property not stored away to be confiscated. Additionally, Plaintiff included his own Inter-Office Communications sheet prepared after the discipline action for improper storage had been settled. In it, he states that, on the day in question, he was looking over legal papers on his bunk, but then began studying the Book of Yahweh Holy Scriptures and the King James Bible. He says he also had a concordance, a Bible dictionary, a regular dictionary, as well as other papers. All of his materials were confiscated.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following facts are not in dispute:

1. Plaintiff was an inmate in custody of TDCJ at all times relevant to his claims;
2. Defendants were employed as Corrections Officers for TDCJ at all times relevant to Plaintiff's claims;
3. On May 25, 2015, Defendants Patton and Pinkston were in Plaintiff's housing unit and conducted a search resulting in the confiscation of Plaintiff's religious property;
4. On May 25, 2015, Plaintiff was informed that his property was confiscated because it was improperly stored; and
5. Plaintiff was charged and found guilty of unauthorized storage of personal property.

## STANDARD OF REVIEW- MOTION FOR SUMMARY JUDGMENT

On motions for summary judgment, the court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Sec. and Exch. Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993); *Gen. Elec. Capital Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992); Fed. R. Civ. P. 56. After such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*.

To avoid summary judgment, the non-moving party must adduce admissible evidence that creates a fact issue concerning existence of every essential component of that party's case – unsubstantiated assertions of actual dispute will not suffice. *Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Fifth Circuit stated that, once the moving party has met its burden, the non-movant must direct the court's attention to admissible evidence in the record that demonstrates it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. *ContiCommodity Serv., Inc. v. Ragan*, 63 F.3d 438, 441 (5th Cir. 1995). Once the defendant has shifted the burden to the plaintiff by properly supporting his motion for summary judgment with competent evidence indicating an absence of genuine issues of material fact, the plaintiff cannot meet his burden by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *Michaels v. Avitech Inc.*, 202 F.3d 746, 754-55 (5th Cir. 2000). A properly-supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is mandatory when a party fails to establish the existence of an essential element of his case on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323.

**FIRST AMENDMENT CLAIM**

Plaintiff alleges Officers Patton and Pinkston violated his First Amendment right to freely exercise his Jewish faith by confiscating material he used for religious study during a search of his housing unit. Prisoners do not lose all rights to free exercise of religion upon incarceration. *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). Nonetheless, a prisoner's free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To establish a free exercise violation, an inmate must demonstrate that prison officials prevented him from engaging in religious conduct without any justification related to legitimate

penological concerns. *Turner v. Safely*, 482 U.S. 78, 89 (1987). The Fifth Circuit holds that proper storage of personal property - religious or not - directly and reasonably relates to the legitimate penological goal of maintaining prison security. *Id*. at 89. Courts reviewing conduct alleged to impinge on religious practice ordinarily give wide deference to the judgment of prison officials when their conduct concerns prison security. *Id*. at 89-90 ("judgment regarding prison security are peculiarly within the province and professional expertise of corrections officials").

Plaintiff's claim is that his free exercise rights were violated when his religious property was confiscated. He does not challenge a TDCJ policy or bring other claims concerning his right to exercise his religion. Plaintiff cannot prevail on this claim since restrictions on an inmate's storage space for legal and religious property are reasonably related to legitimate penological interests. *Carrio v. Texas Dept' of Criminal Justice, Institutional Div.,* 196 F. App'x 266 (5th Cir. 2006). Plaintiff acknowledges being informed that his property was confiscated because it was improperly stored. Plaintiff's grievance records show that his property was confiscated for being improperly stored "on his bunk and under his mattress." The affidavit from Officer Patton notes that Plaintiff's personal items were found under his mattress and also under his storage locker. Finally, Plaintiff's classification records show that he was charged with, and found guilty of, unauthorized storage of property.

Plaintiff claims that, right after the search, Officer Pinkston told Plaintiff he would receive his property back. However, Plaintiff's Step 1 Grievance #2015150573 shows that Plaintiff was formally advised that his property would be disposed of in accordance with TDCJ policy. But property records show that Plaintiff was given the opportunity to make a disposition of his confiscated property, but refused to do so. Later-in-time property records show that, eventually, Plaintiff obviously changed his mind, and made arrangements to have his property mailed to Rose L. Simpson. Thus, to the extent Plaintiff seeks injunctive relief for return of his property, that issue is now moot.

5

In sum, even if Plaintiff disagrees with Officers Patton and Pinkston's justification for confiscating his property, he cannot show they had no justification or that their justification was unrelated to legitimate penological concerns. Because Plaintiff makes no claim that he was otherwise denied the right to freely exercise his religion, this claim must be dismissed.

**FOURTEENTH AMENDMENT CLAIM**

Plaintiff next contends that his due process rights under the Fourteenth Amendment were violated by Defendant Welsh, the hearing officer for the disciplinary case in which Plaintiff was found guilty of unauthorized storage of property. Plaintiff claims that Officer Welch did not allow him to challenge his disciplinary charge by calling witnesses. However, Plaintiff's punishment was only the loss of recreation and commissary privileges; thus, he has not shown a protectable liberty interest sufficient to sustain a Fourteenth Amendment claim.

The Supreme Court placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court concluded the federal judiciary had gone too far in extending due process rights as first articulated in *Wolff v. McDonnell*. It retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement. *Id.* at 485. It referred to its discussion in *Wolff* regarding solitary confinement as "dicta." *Id.* The Supreme Court went on to hold that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. The Court concluded that Conner did not have a "protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action. *Id*.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not

enough to trigger the protection of the Constitution. *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000). The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will not support relief to the extent that it adversely affects parole eligibility. *Sandin*, 515 U.S. at 487. However, the loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison*, 104 F.3d at 769.

In the present case, to the extent Petitioner's punishment was the loss of recreation and commissary privileges, his punishment was not significant enough to trigger the protection of the Constitution. *Id* at 768. Additionally, Officer Welch's affidavit as well as several of Plaintiff's prison records show that Plaintiff became uncooperative and disruptive during his hearing. After being warned that Plaintiff would be ordered to leave the hearing should he continue, Officer Welch notes that Plaintiff's uncooperative and disruptive behavior continued, and Plaintiff was ordered to leave. Nonetheless, due to the absence of a protected liberty interest, Petitioner may not obtain federal relief on this issue, regardless of what may or may not have happened at the disciplinary hearing.

**CONFISCATION OF PROPERTY**

Plaintiff does not assert that his due process rights were violated by the confiscation of his property, only that his free exercise rights were violated. However, because the record shows that more than just Plaintiff's religious property was confiscated, the Court will review this matter.

A state actor's negligent or intentional deprivation of a plaintiff's property does not result in a violation of procedural due process rights if there exists an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (unauthorized intentional conduct); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981) (negligent conduct); *Simmons v. Poppell*, 837 F.2d 1243, 1244 (5th Cir. 1988); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). The Texas court system

7

provides an adequate post-deprivation remedy for the taking of any property. *See Holloway v. Walker*, 784 F.2d 1287, 1292 (5th Cir 1986). Moreover, the Texas state administrative and judicial systems provide an adequate state post-deprivation remedy for property taken from prisoners. *See* Tex. Gov. Code § 501.007. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983), *cert. denied*, 464 U.S. 897 (1983); *Loftin v. Thomas*, 681 F.2d 364, 365 (5th Cir. 1982). Because Texas has adequate post-deprivation remedies, a prisoner does not have a basis for a § 1983 claim for the confiscation of his property. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). However, the confiscation of a prisoner's property under authority of a prison administrative directive is not a random, unauthorized act, and thus the existence of an adequate state post-deprivation remedy does not preclude a § 1983 claim for violation of due process. *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004).

In the instant case, Plaintiff's personal property was confiscated as improperly stored by TDCJ prison officials. Because Texas law provides a meaningful and adequate post-deprivation relief for such a claim, Plaintiff does not have a claim. Although Plaintiff disagrees with the manner of the property search, he simply does not have a basis for a § 1983 claim for the confiscation of property; thus, any related claim must be dismissed.

**QUALIFIED IMMUNITY**

All Defendants allege that they are entitled to qualified immunity from Plaintiff's claims. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). It gives government officials breathing room to make reasonable, but mistaken judgments, and protects all but the plainly incompetent, or those who knowingly violate the law. *Thompson v. Mercer*, 762 F.3d 433, 436-37 (5th Cir. 2014) (citations omitted). To overcome the qualified immunity defense, a plaintiff must allege a violation of a constitutional right and show that the right was clearly established in the specific context of the case. *See Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009).

A law enforcement officer is entitled to qualified immunity if he can establish his conduct was lawful in light of clearly-established law and the information he possessed. A court must ask whether a reasonable officer could have believed that his actions were legal in light of clearly-established law and the information possessed by him at the time and whether a reasonable officer identically situated could have believed that the actions used were lawful. *Saucier v. Katz*, 533 U.S. 194, 210 (2001). To overcome the qualified immunity defense, the plaintiff must allege a violation of a constitutional right and show that the right was clearly established in the specific context of the case. *See Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009). Since both prongs must be satisfied, the Supreme Court concluded that the sequence set forth in *Saucier* should no longer be regarded as mandatory. *Id*. at 236. If the court finds that an official's conduct does not violate a clearly-established constitutional right, then qualified immunity applies, and no further analysis is required. *Id*. at 232. If, however, the court finds that the plaintiff has alleged the violation of a clearly-established constitutional right, the court must proceed in determining if the defendant's action could reasonably have been thought consistent with that right. *Siegert v. Gilley*, 500 U.S. 226, 230 (1991).

When determining whether the defendant acted reasonably, the court looks to whether the defendant's actions were objectively reasonable in relation to the law as it existed at the time the conduct occurred and in light of the information the defendant possessed. *Mouille v. City of Live Oak*, 977 F.2d 924, 928 (5th Cir. 1993). Regardless of an official's mistaken assumptions or subjective motivations, he is entitled to qualified immunity if his conduct is determined to have been objectively reasonable. The Fifth Circuit stated:

> [T]he court should ask whether the [defendants] acted reasonably under settled law in the circumstances, not whether another reasonable or more reasonable, interpretation of the events can be constructed . . . after the fact . . . . Even if law enforcement officials erred in [their conclusions], they would be entitled to qualified immunity if their decision was reasonable albeit mistaken. [Citations omitted.]

*Lampkin v. City of Nacogdoches*, 7 F.3d 430, 434-35 (5th Cir. 1993), *cert. denied sub nom.*, *Vanover v. Lampkin*, 114 S. Ct. 1400 (1994). Similarly, in *Valencia v. Wiggins*, the Supreme Court held, "It is therefore irrelevant whether the defendants in this case acted with intent to injure as long as their

9

conduct was objectively reasonable." 981 F.2d 1440, 1448 (5th Cir. 1993), *cert. denied*, 509 U.S. 905 (1993).

In this case, Plaintiff has not alleged facts to overcome Defendants' entitlement to qualified immunity. Plaintiff asserts a conspiracy among "intimate sexual partners," referring to Officers Patton and Pinkston, and alleges other coworkers covered up the violation of his rights. Unsupported, inflammatory remarks cannot overcome Officers Patton and Pinkston's entitlement to qualified immunity. Likewise, as it concerns Officer Welch, Plaintiff fails to allege facts sufficient to overcome his entitlement to qualified immunity. While Plaintiff disagrees with the result of his disciplinary hearing, he fails to demonstrate how Officer Welch's actions were unreasonable.

The competent summary judgment evidence establishes that, at the time of the incident in question, Defendants were governmental officials performing discretionary acts in good faith, acting under color of state law. They were acting in their official capacities as TDCJ correctional officers. Their actions were reasonable, proper, and necessary to perform their duties as TDCJ correctional officers. Consequently, Defendants are entitled to qualified immunity.

**SUPERVISORY LIABILITY**

Plaintiff claims that Officer Pinkston's liability rests, in part, on her failure as Officer Pattons' supervising officer. However, Section 1983 does not create a cause of action based on supervisory liability. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). The Supreme Court held that the term, "supervisory liability," in the context of a Section 1983 lawsuit is a "misnomer" since "each Government official, his or her title notwithstanding, is only liable for his or her own conduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). This issue must be dismissed.

**ELEVENTH AMENDMENT IMMUNITY**

To the extent Plaintiff brings claims against Defendants in their official capacity, the Eleventh Amendment bars suit in federal court against a state, or its agencies or departments, regardless of the relief requested. *Pennhurst State Sch. & Hosp. v. Alderman*, 465 U.S. 89, 100 (1984). Neither Congress nor the State of Texas has waived Eleventh Amendment immunity

regarding Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity."). A suit for damages against a state official in his official capacity is not a suit against that individual, but a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

In the present case, Plaintiff's allegations concern matters within the scope of the employment of Officers Patton, Pinkston and Welch as state employees. Consequently, to the extent Plaintiff is suing them for money damages in their official capacity, the Eleventh Amendment bars these claims.

## CONCLUSION

A review of the competent summary judgment evidence in the light most favorable to the non-movant shows that there are no disputed issues of material fact and that Defendants Patton, Pinkston, and Welch are entitled to judgment as a matter of law. Plaintiff failed to direct the Court's attention to admissible evidence in the record that demonstrates he can satisfy a fair-minded jury that he is entitled to a verdict in its favor. Plaintiff also fails to meet his burden of overcoming qualified immunity and Eleventh Amendment immunity. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. #35) is **GRANTED** and the claims against Defendants Patton, Pinkston, and Welch are **DISMISSED** with prejudice. All motions by either party not previously ruled upon are **DENIED**.

**SIGNED this 16th day of March, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE